Finding no error in the record calling for reversal, the judgment is affirmed.

---

**SANDIFER v. FORT WORTH NAT. BANK.**
**(No. 11954.)**

Court of Civil Appeals of Texas. Fort Worth.
April 14, 1928.

Rehearing Denied May 19, 1928.

**1. Appeal and error ☞1057(1)—Exclusion of letter to defendant offered to explain defendant's failure to return letter of guaranty held not ground for reversal, where testimony as to contents was admitted without objection.**

Exclusion of letter written defendant, which was offered to explain defendant's failure to request return of letter of guaranty, was not ground for reversal, where testimony as to contents of letter was introduced and admitted without objection and purpose of offering letter was thus fully accomplished.

**2. New trial ☞143(2)—Finding that jury was not guilty of misconduct held sustained by evidence on motion for new trial.**

Testimony of juror, together with other circumstances on motion for new trial, *held* to sustain trial judge's finding that misconduct, claimed by virtue of juror's statement concerning his own knowledge of witness, never occurred.

**3. Appeal and error ☞1015(5)—Finding of trial judge on issue of jury's misconduct, if supported by sufficient evidence, is conclusive on appeal.**

Finding of trial judge on issue of whether or not there was misconduct of jury cannot be disturbed on appeal, if there is sufficient evidence to support the finding.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Suit by the Fort Worth National Bank against C. P. Sandifer and another. Judgment for plaintiff, and defendant named appeals. Affirmed as to defendant named.

Callaway & Wade, of Fort Worth, for appellant.

Bryan, Stone, Wade & Agerton, of Fort Worth, for appellee.

DUNKLIN, J. The Fort Worth National Bank recovered a joint and several judgment against H. A. Wittliff & Co., a private corporation, and C. P. Sandifer, for the sum of $12,136.96. Prior to the institution of the suit the property of H. A. Wittliff & Co. had been placed in the hands of J. J. Callaway, as receiver, by the district court of Travis county, and he was joined as a defendant in this suit, and judgment was rendered against him also as such receiver. Neither the defendant company nor its receiver has challenged the correctness of the judgment in any respect, but defendant C. P. Sandifer has appealed.

The suit was upon a promissory note of date March 14, 1925, executed by the defendant company, payable to the order of plaintiff 120 days after date, in the principal sum of $10,000, with interest from maturity at 10 per cent. per annum, and containing the usual stipulation for attorney's fees; also upon the following obligation in writing executed by defendant Sandifer to secure the payment of that note, and designated in the record as a letter of credit, or. guaranty," to wit:

"State of Texas, County of Tarrant.

"Know all men by these presents: That in consideration of accommodation by way of the extension of direct loans, discounts and advances on open account now existing, or direct loans, discounts and advances on open account that may hereafter be made to the H. A. Wittliff & Co., Inc., of Fort Worth, Texas, by the Fort Worth National Bank, Fort Worth, Tarrant county, Texas, a corporation existing under the laws of the United States for banking purposes, all of which said direct loans and discounts and advances on open account shall not exceed fifteen thousand ($15,000.00) dollars at any one time, that I, we, or either of us, do by these presents acknowledge ourselves to be bound and held liable unto the said the Fort Worth National Bank, Fort Worth, Tarrant county, Texas, for the prompt payment of all such funds as may be due said bank by said H. A. Wittliff & Co., Inc., on account of either direct loans, discounts or advances on open ac-

count made to the said H. A. Wittliff & Co., Inc., by said bank, together with all renewals and extensions thereof.

"And I, we, or either of us, hereby expressly authorize said bank, at its discretion, to make loans, to discount paper for or make advances on open account to said H. A. Wittliff & Co., Inc., not to exceed fifteen thousand ($15,-000.00) dollars at any one time, and at its discretion to grant renewals and extensions thereof without notice to me, or either of us, of the dishonor or failure of said H. A. Wittliff & Co., Inc., to pay any of its bills or obligations to said bank, and suit thereon is expressly waived.

"This agreement shall continue in force from this date until all obligations in contemplation herein are paid, but it is agreed and understood that as guarantor hereunder, by giving proper notice in writing, and by the satisfactory adjustment of any liabilities of the said H. A. Wittliff & Co., Inc., to said bank existing at the time of said notice, I, we, or either of us, may be released from liability hereunder for any further obligation of said H. A. Wittliff & Co., Inc.

"This agreement is to be performed in Tarrant county, Texas, and any suit for breach thereof may be prosecuted in the courts of said county, Fort Worth, Texas.

"Witness our hands at Fort Worth, Texas, this 13th day of February, A. D. 1924.

"Witness: ————.

"[Signed]  C. P. Sandifer."

The record shows that defendant H. A. Wittliff & Co. was a private corporation engaged in selling life insurance, with its principal place of business in Fort Worth; that H. A. Wittliff was its president and C. P. Sandifer, one of the stockholders who resided in Crowell, Tex., was its vice president. Premiums earned by the company for insurance sold were usually covered by promissory notes of the insured maturing later, and in order to meet current expenses of the business pending their collection, it became necessary to arrange for a line of credit with some bank. With that end in view, H. A. Wittliff and C. P. Sandifer visited plaintiff bank and took up the matter with W. M. Massie, one of its vice presidents. They explained to Massie the nature of the business of the company, its needs for financial assistance, and the fact that they expected to liquidate any amounts borrowed out of insurance premiums when collected. As a further inducement to Massie to extend the credits desired, Sandifer proposed to become individually responsible for any loans made by the bank not to exceed the sum of $15,000 at any one time, which was the fixed amount of credit Wittliff and Sandifer said they would need. Massie then told Wittliff and Sandifer that the line of credit desired would be given provided the same was approved by other officers of the bank to whom he promised to submit the matter. Later the foregoing agreement in writing, upon which Sandifer was sued, was prepared by some officer of the bank, and after Sandifer executed and delivered it, the line of credit requested

8 S.W.(2d)—33

was extended, and during the year 1924 the same amounted at one time to $12,000, which was paid by the defendant company. Later, and on March 14, 1925, and without any further negotiations between Sandifer and the bank, the loan of $10,000, evidenced by the note sued on, was made.

As a special defense, Sandifer alleged that in the preliminary oral negotiations with Massie, noted above, it was agreed that his guaranty would apply to loans made during the year 1924 only, and would not include loans made after January 1, 1925; that he signed the instrument of guaranty under the belief that it embodied such oral agreement; and that the failure of the instrument to so provide was due to the mutual mistake of himself and Mr. Massie, acting for the bank. That defense was submitted to the jury in special issues Nos. 1 and 3, which, with the findings of the jury thereon, are as follows:

"(1) Does the letter of credit or guaranty herein sued upon express the true agreement made between the plaintiff, acting by and through its vice president, W. M. Massie, and the defendant Sandifer, if any such agreement was made, as to the time that such letter of credit or letter of guaranty should run?  A. Yes.

"(2) At the time the letter of credit or guaranty herein sued upon was executed by defendant Sandifer, did the defendant Sandifer state to W. M. Massie, the vice president of plaintiff, that said letter of credit or guaranty guaranteed the payment of the existing indebtedness of H. A. Wittliff & Co. to plaintiff and such loans, discounts, or advances on open account as should be made by plaintiff to defendant H. A. Wittliff & Co., during the year 1924 only? A. No."

[1] Sandifer also agreed with Massie to deposit, as collateral security for the line of credit mentioned, certain notes owned by him; and during the summer of 1924 some $22,500 of such notes were in fact hypothecated. In November of the same year, when defendant company paid $12,000 in full settlement of all it owed the bank at that time, the bank surrendered to Sandifer the collateral notes which he had deposited. Mrs. Satow, who was an employee of Wittliff & Co., testified that after the return of said collateral she, at the request of Sandifer, went to the bank and requested the return also of the letter of credit and guaranty which he had executed to the bank, and was then told by either W. M. Massie or R. W. Fender, another officer of the bank, that it was the custom of the bank to keep all such letters of credit, and, for that reason, the request could not be complied with, but that the letter of credit would not be further used. She further testified that after getting that information she communicated it to Sandifer by letter, and Sandifer testified that he received that letter. Sandifer then offered in evidence copy of the letter written by Mrs.

Satow to him, detailing what she had just testified to; and error has been assigned to the action of the court in excluding it on objection that it was hearsay. Counsel for appellant admits that the letter was hearsay evidence, and under ordinary circumstances was not admissible, but they contend that it should have been admitted to explain Sandifer's failure to request the return of the letter of guaranty prior to January 1, 1925, after his collateral was returned to him upon payment by the company of all it then owed the bank. A sufficient answer to this assignment is found in the fact that the foregoing testimony of Mrs. Satow of the contents of the letter was introduced by appellant and admitted without objection, and therefore the purpose sought in offering the letter also was fully accomplished without introducing it. At all events, there was no reason for a repetition of the facts already testified to.

Another assignment of error is addressed to the refusal of the trial court to grant a new trial because of what is alleged to be misconduct of the jury in reaching the verdict in plaintiff's favor against Sandifer, as set out in the order of the trial court overruling Sandifer's motion for a new trial, and the same, together with the trial judge's findings thereon, follows:

"After hearing said motion and the evidence submitted in connection therewith, the court finds from the evidence that the juror J. W. St. Clair did not, in the presence of the other jurors while deliberating upon the case, make the statements attributed to him in said motion for a new trial, namely, that he had personally known W. M. Massie, a witness for the plaintiff, for a long time, and that he knew that he (W. M. Massie) would tell nothing but the truth; nor did the said juror, J. W. St. Clair, make any statements to the other jurors or to any of them while deliberating upon the case similar in effect to that so attributed to him, and the court is further of the opinion that said motion is not well taken and should be in all respects overruled."

[2, 3] Some three months intervened between the date when the verdict of the jury was returned and the date of the hearing of the motion for a new trial, and the testimony of some of the jurors introduced by appellant tended to support the allegations as to statements of St. Clair, but their testimony also indicated some uncertainty of memory as to what really transpired in the jury room. But St. Clair, the foreman, testified positively and emphatically that he had never been personally acquainted with W. M. Massie before the trial of the case, and therefore could not, and did not, make the alleged statement concerning W. M. Massie and his testimony upon the trial. The testimony of St. Clair, together with other circumstances brought out upon the hearing of the motion for a new trial, was sufficient to sustain the finding of the trial judge that the alleged misconduct of the jury never occurred, and we, accordingly, approve that finding. Many decisions have been cited by appellant showing reversals of judgments for misconduct of juries who tried the cases, such as St. L. S. W. Ry. Co. v. Robinson (Tex. Com. App.) 285 S. W. 269, 46 A. L. R. 1507; Moore v. Ivey (Tex. Com. App.) 277 S. W. 106, and others, but none of those decisions are in point here, since in those cases misconduct of the jury was in fact established, while in the present suit appellant has failed to sustain his allegations of misconduct. Many decisions might be cited to the effect that the finding of the trial judge on the issue of whether or not there was misconduct of the jury, like any other finding of fact by a trial court or a jury, cannot be disturbed upon appeal, if there is sufficient evidence to support the finding. Those decisions are applicable here, and the rule therein announced is controlling. The following are some of those decisions: San Antonio Traction Co. v. Cassanova (Tex. Civ. App.) 154 S. W. 1190; Day v. G., S. & S. F. Ry. Co. (Tex. Civ. App.) 297 S. W. 501; H. & T. C. Ry. Co. v. Gray, 105 Tex. 42, 143 S. W. 606; and Kalteyer v. Mitchell, 102 Tex. 390, 117 S. W. 792, 132 Am. St. Rep. 889.

Accordingly, all assignments of error are overruled, and the judgment of the trial court in favor of the Fort Worth National Bank against appellant Sandifer is affirmed. The judgment in favor of the bank against the defendant company and its receiver is left undisturbed, since no complaint is made thereof.